United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MONICA M. SAENZ,

        Plaintiff,

    v.

KAISER PERMANENTE INTERNATIONAL, et al.,

        Defendants.
_____/

No. C 09-5562 PJH

**ORDER GRANTING MOTION TO REMAND AND VACATING HEARING DATE**

Before this court is plaintiff's motion to remand this matter to Alameda County Superior Court. Having carefully read the parties' papers and considered the relevant legal authority, the court hereby rules as follows.[1]

## BACKGROUND

This is a purported class action that arises from an alleged breach of defendants' data security systems.

A.    Background Allegations

Plaintiff Monica M. Saenz ("plaintiff" or "Saenz") was and is employed by defendant The Permanente Medical Group, Inc. ("TPMG"), a member of larger defendant Kaiser Permanente, Int'l ("Kaiser Permanente") – which is also comprised of defendants Kaiser Foundation Health Plan, Inc. ("Kaiser Health Plan") and Kaiser Foundation Hospitals ("Kaiser Foundation")(all collectively "Kaiser"). See generally First Amended Complaint

---

[1] This court finds the motion appropriate for decision without further oral argument, as permitted by Civil L.R. 7-1(b) and Fed. R. Civ. P. 78. See also Lake at Las Vegas Investors Group, Inc. v. Pacific Malibu Dev. Corp., 933 F.2d 724, 729 (9th Cir. 1991) (holding that the court's consideration of the moving and opposition papers is deemed an adequate substitute for a formal hearing), cert. denied, 503 U.S. 920 (1992). Accordingly, the February 24, 2010 hearing date is VACATED.

("FAC"), attached as Exhibit B to Notice of Removal, ¶¶ 14-19. Plaintiff is a member of defendant SEIU United Healthcare Workers-West ("UHW"), a labor union that is alleged to be the largest healthcare union in the Western United States. See FAC, ¶ 20. UHW is a local branch of defendant Service Employees International Union ("SEIU"), an international labor union. Id. at ¶ 21. Collectively, defendants UHW and SEIU are referred to as UHW.

Plaintiff alleges that Kaiser provided UHW with personal information regarding Kaiser employees (including plaintiff), which information – from federal, state, or local government records – was not otherwise publicly available or lawfully made available to the general public. FAC, ¶ 44. Defendants, however, allegedly failed to implement and maintain reasonable data security procedures and practices in order to protect the employees' private information from unauthorized access, destruction, use, modification or disclosure, and furthermore failed to utilize procedures that would enable defendants to detect unauthorized use of the information. FAC, ¶ 45. Plaintiff notes, for example, that defendants stored employees' information in an unencrypted fashion, even though it is standard practice to encrypt such information due to security concerns. Id. Plaintiff also alleges that defendants failed to hire, train, and supervise their employees and/or agents in order to guard against the unauthorized disclosure of employees' personal information. FAC, ¶¶ 46-48.

Plaintiff alleges that, in July 2007, certain computer files, databases and/or other electronically stored records ("files") containing the personal information of approximately 29,500 individuals were removed without authorization from UHW's offices in Oakland, California. FAC, ¶ 49. The data removed included information containing: names, addresses, telephone numbers, social security numbers, dates of birth, gender, and hourly rate of pay. Id. Plaintiff furthermore alleges that the removal of these files was not a good faith acquisition of personal information by an employee or agent of defendants' for a legitimate business purpose. Id. Rather, the files were taken by an employee or agent of defendants' in a manner consistent with bad faith. Id. at ¶¶ 50-51.

Although the aforementioned security breach occurred in July 2007, plaintiff alleges that defendants did not provide the individuals whose information was compromised any notice of the breach, until February 6, 2009, when one of the Kaiser defendants gave written notice of the breach to its employees whose information was contained in the stolen files. See FAC, ¶¶ 52-53. Plaintiff alleges that the lag time between the security breach and defendants' notice to affected individuals, was not expedient, as required by law. Id. at ¶ 55. This prevented plaintiff and other members of the class from taking immediate steps to monitor and attempt to safeguard their personal information. Id.

As a result of the breach of security concerning plaintiff and putative class members' personally identifiable information, plaintiff alleges that she and members of the class have suffered economic damages, including the costs of obtaining identity theft insurance, professional credit monitoring, cancelling and obtaining new credit and debit cards, as well as fees for freezing and unfreezing bank and credit accounts. FAC, ¶ 64.

In addition to the harm caused by disclosure of the employees' confidential information, plaintiff (and at least 50 putative members of the class) has also allegedly become a victim of identity theft. FAC, ¶ 69. Specifically, when plaintiff checked her credit report in late October 2008, she learned that her personal information was used by an unauthorized individual to withdraw money from plaintiff's bank account, to open approximately 10 unauthorized credit cards and accumulate charges therein, and to commit crimes across the country. Id. at ¶ 76.

Plaintiff concedes that Kaiser offered plaintiff and putative members of the class one year of professional credit monitoring through Equifax as a remedy for the security breach, but alleges that this remedy was inadequate. FAC, ¶ 57.

B.  The Instant Action

Plaintiff filed the instant lawsuit in Alameda Superior Court on October 13, 2009. See Notice of Removal, Ex. A. Plaintiff's amended complaint was filed on November 19, 2009.

3

In it, plaintiff specifically seeks to represent the following class of persons: "All persons in the State of California whose personal information was stored in certain computer files removed from SEIU-UHW's office(s) on or about July 2007." See FAC, ¶ 27. Plaintiff additionally seeks to represent the following sub-class of persons: "All persons in the State of California whose personal information was stored in certain computer files removed from SEIU-UHW's offices on or about July 2007 and have been victims of identity theft at any time after July 2007. Id.

The amended complaint asserts the following causes of action against defendants: (1) failure to protect security of private information pursuant to Cal. Civil Code § 1798.80 et seq.; (2) fraudulent concealment; (3) negligence; (4) negligent hiring, training, and supervision of employees; and (5) violation of Cal. Bus. & Prof. Code § 17200 et seq. See generally FAC.

Kaiser removed the action on November 23, 2009, asserting federal question jurisdiction, due to preemption pursuant to section 301 of the Labor Management Relations Act ("LMRA") and section 9 of the National Labor Relations Act ("NLRA"). UHW joined in the removal on November 25, 2009.

Plaintiff now seeks to remand the complaint to state court, on grounds that federal question jurisdiction is lacking. Concurrently, defendants have also filed pending motions to dismiss and for judgment on the pleadings.

**DISCUSSION**

A.  Legal Standard

Remand may be ordered for either lack of subject matter jurisdiction or for "any defect in removal procedure." 28 U.S.C. § 1447(c). Generally, there is a strong presumption in favor of remand. Sanchez v. Monumental Life Ins. Co., 102 F.3d 398, 403-04 (9th Cir. 1996). The removal statutes are construed restrictively, and doubts about removability are resolved in favor of remanding the case to state court. Shamrock Oil & Gas Corp. v. Sheets, 313 U.S. 100, 108-09 (1941); Guas v. Miles, Inc., 980 F.2d 564 (9th

Cir. 1992).

B. Motion to Remand

The overriding issue raised by plaintiff's motion is whether federal question jurisdiction exists, such that federal subject matter jurisdiction over the action may be exercised. Whether a federal question exists depends upon the nature of plaintiff's complaint, and whether plaintiff pleads a claim that "arises under" federal law. Generally, an action arises under federal law if federal law either creates the cause of action, or the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law. See Franchise Tax Bd. v. Construction Laborers Vacation Trust, 463 U.S. 1, 27-28 (1983). In certain limited contexts, however, even a complaint that raises only state law claims and issues will be recharacterized to state a federal claim, under the doctrine of complete preemption. Id. at 23-24. In these cases, the preemptive force of federal law is so powerful that it displaces any state law cause of action, leaving room for only a federal claim for purposes of the "well-pleaded" complaint rule, and removability. See, e.g., Met. Life Ins. Co. v. Taylor, 481 U.S. 58, 63-64 (1987); see also Caterpillar, Inc. v. Williams, 482 U.S. 386, 393 (once preempted, "any claim purportedly based on[a] ... state law is considered, from its inception, a federal claim, and therefore arises under federal law.").

It is upon the complete preemption doctrine that defendants now rely. Although undisputed that plaintiff's amended complaint facially states five state law causes of action against defendants, and that the allegations in no way otherwise suggest that an affirmative federal claim is being expressly pled, defendants assert that plaintiff's state law claims should be recharacterized as federal claims under the following two grounds: (1) preemption pursuant to section 301 of the LMRA; and (2) preemption pursuant to section 9 of the NLRA.

    1. Preemption Pursuant to LMRA § 301

Defendants contend that LMRA preemption applies because plaintiff's claims are inextricably intertwined with the interpretation of the applicable collective bargaining

agreement ("CBA") between the parties, and squarely rest upon the express terms of that agreement. They note, for example, that when a Kaiser employee authorizes Kaiser to deduct union dues and fees from an employee's wages, the CBA actually requires Kaiser to provide employees' personal information to the UHW, in order to facilitate the collection and remittance of union dues from Kaiser employees to UHW. See DecLMRAtion of Emily White ISO Def. Opp. Remand ("White Decl."), Ex. A at 8. Thus, contend defendants, plaintiff's state law claims amount to nothing more than a complaint about the manner in which Kaiser performed express obligations under the CBA – i.e., a breach of the CBA – and preemption is compelled.

As a preliminary matter, it is well-established that the body of federal common law authorized under LMRA § 301 completely preempts state law claims that are based on collective bargaining agreements. See Franchise Tax Bd., 463 U.S. at 23 ("Any such suit is purely a creature of federal law, notwithstanding the fact that state law would provide a cause of action in the absence of § 301). The touchstone for determining the scope of LMRA preemption is whether resolution of the state law claim requires the court to construe a provision of the collective bargaining agreement in question. See Lingle v. Norge Division of Magic Chef, Inc., 486 U.S. 399, 412 (1988). In order for preemption under the LMRA to apply, the need to interpret the CBA "must inhere in the nature of the plaintiff's claim." Cramer v. Consolidated Freightways, Inc., 255 F.3d 683, 691 (9th Cir. 2001). The "bare fact" that a collective bargaining agreement will be consulted in the course of state-law litigation, does not require that the state claim be extinguished. See Livadas v. Bradshaw, 512 U.S. 107, 124 (1994).

As plaintiff notes, the Ninth Circuit has utilized a two-part inquiry in determining whether a plaintiff's state law claim is preempted under the LMRA: first, whether the plaintiff's asserted cause of action involves a right conferred upon the plaintiff/employee by virtue of state law or, instead, is grounded in a CBA. Second, and in the event the plaintiff's right is independent of the CBA, the court must still consider whether it is nevertheless

"substantially dependent on analysis of a [CBA]." See Burnside v. Kiewit Pacific Corp., 491 F.3d 1053, 1059-60 (9th Cir. 2007).

Here, contrary to defendants' assertions, both aspects of this inquiry lead to the conclusion that the LMRA does *not* preempt plaintiff's state law claims. The gravamen of plaintiff's action is that defendants' conduct failed to prevent the unauthorized disclosure of plaintiff's (and class members') personal information or to timely notify plaintiff (and class members) of such unauthorized disclosure, and in doing so, violated plaintiff's (and class members') state constitutional and statutory rights to privacy – not any rights that can be found in the CBA. See, e.g., FAC, ¶¶ 60-62. Each of plaintiff's asserted claims stem from this independent gravamen, not from the CBA. Plaintiff's first claim alleging violation of California Civil Code § 1798.82(a), for example, is premised upon defendants' violation of an independent state statutory law that requires defendants to disclose breaches of certain security systems. Plaintiff's claims for fraudulent concealment, for negligence, and for violation of California's unfair competition law, are all similarly rooted in defendants' alleged breaches of duties – rooted in state law – to reasonably secure and protect personal information, and to disclose unauthorized access or use of such information to affected employees. None of these claims is dependent upon the 'due remittance' provisions of the CBA, as defendants urge. Those CBA provisions merely provide that Kaiser shall have the responsibility of providing certain personal employee information to UHW. Indeed, nor does plaintiff contest that Kaiser did have that responsibility under the CBA. Rather, what plaintiff contests is that *once that Kaiser undertook to provide such information*, defendants were under independent state law duties to protect against unlawful disclosure of such information, and to notify plaintiff(s) in the event such unlawful disclosure occurred – all which defendants allegedly failed to do.

In sum, plaintiff's asserted claims are overarchingly rooted in privacy and data rights secured under color of state constitutional, statutory and common law, rather than any right rooted in the CBA. And while resolution of plaintiffs' claims may require the court to look at

the provisions of the CBA in order to understand the context in which Kaiser provided plaintiff's personal information to the UHW, the CBA's involvement is only tangential. Resolution of the heart of plaintiff's claims – as noted above – will not require any substantial interpretation of the CBA.

Accordingly, the court declines to find that section 301 of the LMRA preempts plaintiff's state law causes of action, and removal on this preemption ground is inappropriate.

2. Preemption Pursuant to NLRA § 9

Defendants alternatively contend that removal is appropriate, because plaintiff's state law claims are preempted under section 9 of the NLRA, and more specifically, under the duty of fair representation that section 9 imposes upon labor organizations such as UHW. See 29 U.S.C. § 159(a); Vaca v. Sipes, 386 U.S. 171, 177 (1967). Generally, the statutory duty of fair representation requires a union (and its designated agents) to represent all union members and to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct. See Air Line Pilots Ass'n, Intern. v. O'Neill, 499 U.S. 65, 75-76 (1991). The federal statutory duty which unions owe their members to represent them fairly has been held to displace and preempt state law that would impose duties upon unions by virtue of their status as the workers' exclusive collective bargaining representative. See Adkins v. Mireles, 526 F.3d 531, 539-40 (9th Cir. 2008).

Defendants contend that plaintiff's state law claims properly plead breach of the duty of fair representation, because plaintiff's claims all turn on the allegations that UHW owed plaintiff a special duty through its position as exclusive bargaining agent for plaintiff. See Opp. Br. at 12:4-7. Thus, they assert, plaintiff's state law claims are properly characterized as federal claims pursuant to section 9 of the NLRA, and are removable. As to removability, defendants acknowledge that, unlike section 301 of the LMRA, the Ninth Circuit has not yet had the opportunity to address whether preemption under section 9(a) of

the NLRA is a sufficient independent basis for removal of an action (i.e., falls under the doctrine of *complete* preemption). Nonetheless, they contend that all Circuits that have considered the issue have held that a state law claim that can be construed as a claim for the breach of the duty of fair representation may be removed to federal court, and they urge the court to do so here.

Ultimately, the court need not reach the question whether section 9 of the NLRA completely preempts state law claims that deal with the duty of fair representation. This is because the court does not agree with defendants' initial premise – i.e., that plaintiff's state law claims *do* turn on the allegations that UHW owed plaintiff a special duty through its position as exclusive bargaining agent for plaintiff. Defendants, as stated in the foregoing discussion in connection with LMRA section 301 preemption, would have the court conclude that plaintiff's claims are rooted in allegations that defendants violated duties that stem from the collective bargaining relationship between plaintiff and defendants. This is simply not the case. As noted above, the "duties" that plaintiff claims were violated stem – not from the union's duty to fairly represent her – but rather from the statutory, constitutional, and common law duties that guarantee plaintiff's right to privacy in the maintenance of her personal information, and to notice of any unauthorized disclosure of such. Indeed, it is difficult to ascertain, and defendants do not explain, how UHW's duty to fairly represent plaintiff as a union member are concretely implicated in plaintiff's claim that UHW should have safeguarded her personal information, once UHW *had already received* that information as part of the relevant CBA's provision.

In sum, the court agrees with plaintiff that the complaint does not fairly allege that the union defendants owe her and the class a duty of fair representation, and the claims do not turn on any such allegation. Since the duty of fair representation can be neither inferred nor implied as a substantive or necessary legal issue in the case, no preemption pursuant to section 9 results. As such, removal on this preemption ground, too, is ultimately inappropriate.

C.    Conclusion

For all the foregoing reasons, the court accordingly GRANTS plaintiff's motion to remand. In view of the foregoing ruling in connection with plaintiff's motion to remand, the court also declines to consider the merits of the pending motions to dismiss and for judgment on the pleadings, and furthermore VACATES the February 24, 2010 pending hearing date in connection with those motions.

**IT IS SO ORDERED.**

Dated: February 19, 2010

_____
PHYLLIS J. HAMILTON
United States District Judge